A. R. HEYWARD, II, and C. D. Tucker, doing business as W. B. Guimarin & Company, Plaintiffs,

v.

AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant.

Civ. A. No. 3583.

United States District Court, E. D. South Carolina, Columbia Division.
March 2, 1955.

Nelson, Mullins & Grier, Columbia, S. C., for plaintiffs.

Whaley & McCutchen, Roger M. Heyward, Columbia, S. C., for defendant.

WYCHE, Chief Judge.

This matter comes before me on defendant's motion to dismiss on the ground that the complaint fails to state a claim against the defendant upon which

relief can be granted. The motion was heard upon the complaint filed in the present suit, to which was attached a copy of the complaint in the State Court, which the plaintiffs contend the defendant was under the duty to defend, the plaintiffs' answers to certain interrogatories interposed by the defendant and the insurance policy involved.

The defendant submits that the motion to dismiss should be treated as a motion for summary judgment and judgment given in favor of the defendant as there was no obligation on the insurer to defend the action in the State Court, which defendant claims alleged a claim not embraced within the policy provisions. Under Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A., where a motion to dismiss is founded upon the failure of the pleadings to state a claim upon which relief can be granted, and matters outside the pleadings are presented to and not excluded by the Court, the motion may be treated as one for summary judgment and disposed of as provided in Rule 56. Upon argument of the motion, plaintiffs' counsel stated that they had no objection to defendant treating the motion as one for summary judgment. Therefore, the motion will be considered as one for summary judgment for defendant.

The plaintiffs are heating and plumbing contractors. The defendant insurance company issued to the plaintiffs its *comprehensive* liability policy covering both personal injury and property damage. The plaintiffs are partners and for convenience will be referred to hereafter as the "plaintiff".

The Housing Authority for the City of Aiken, South Carolina, undertook to construct a large housing project. The plaintiff had one contract for the entire plumbing and heating portion of the project, and not merely one to construct the underground gas lines leading into dwelling unit 14–E, as defendant's counsel seem to assume in their argument.

Prior to the completion of the entire project, as the individual dwelling units became usable for occupancy, the Hous-

ing Authority rented them to tenants. Included in such list of rented dwellings was Apartment 14–E which was occupied by the Brantleys. Defendant has failed to show that the explosion which occurred in Apartment 14–E, and which injured Eddie Brantley, the plaintiff in the State Court suit, occurred before the entire project had been completed. Eddie Brantley brought a suit to recover damages for his personal injuries in the Court of Common Pleas for Aiken County, against the Housing Authority, all of the contractors and sub-contractors, including the plaintiff, as well as the sureties on the performance bonds given for the job.

The plaintiff delivered the suit papers to the defendant. The defendant refused to defend the action on behalf of the plaintiff or to pay any judgment recovered thereon although the plaintiff insisted that the policy in question covered this accident.

Plaintiff then brought this suit for declaratory judgment, asking the court to hold that defendant is obligated to plaintiff to defend the suit and to pay any judgment rendered therein within the limits of said policy. Since the present action was instituted the State Court action has been disposed of by way of settlement, to which the plaintiff contributed the sum of $4,200. The defendant insurance company was a party to the State Court action, participated in the settlement, and defendant has conceded that there is no question as to the reasonableness of the settlement.

The defendant filed a motion to dismiss upon two grounds, "(a) The work, out of which the State Court action is alleged to have arisen, had been completed by plaintiff, or its subcontractor, at the time of the accident, as set forth in said action, in which connection the policies of insurance set forth in the complaint herein provide: 'This policy does not apply: * * * to * * * work completed by or for the named insured, out of which the accident arises.' (b) The provisions of the policies of insurance, as set forth in the complaint herein, with reference to

the obligations of defendant to defend actions against plaintiff, expressly apply only to such actions alleging liability or damages for which plaintiff was protected under such policies of insurance."

In the basic form of the policy the insurer agrees: "To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability imposed upon him by law, or the liability of others assumed by him under written contract for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, and arising out of such of the coverages hereinafter defined as are indicated by specific premium in Item 3 of the declarations; Coverage A —Automobile Bodily Injury Liability. Ownership, maintenance or use of any automobile including the loading or unloading thereof. Coverage B—Bodily Injury Liability other than Automobile. Any bodily injury hazard not otherwise excluded in the policy that does not come within Coverage A."

The policy further provides that the Company shall: "(a) defend in his name and behalf any suit against the Insured alleging such bodily injury, sickness, disease, including death resulting therefrom, or such injury to or destruction of property and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;".

On page 2 of the policy, under the heading of "Exclusions", it is provided, "This policy does not apply: * * * (4) to injury to or destruction of (1) property owned, transported, occupied or used by or rented to the Insured, or (2) except with respect to liability of others for damages assumed under contract as is covered by this Policy and in the use of elevators or escalators, property in the care, custody or control of the Insured, or (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the Named Insured, or work completed by or for the Named Insured, out of which the accident arises."

The policy contains an Endorsement which provides, "It is agreed that this policy does not apply to Products Liability * * * mentioned in Condition 3." Condition 3 of the policy reads as follows: "Definitions. * * * 'Products liability' shall mean (1) With respect to goods or products, the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the Insured, other than equipment rented to or located for use of others but not sold, if the accident or occurrence takes place after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured or on premises for which the classification stated in the Policy or in the Company's manual excludes any part of the foregoing; (2) Operations, if the accident or occurrence takes place after such operations have been completed or abandoned at the place of accident or occurrence thereof and away from premises owned, rented or controlled by the Insured, except (a) pick-up and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in the Policy or in the Company's manual specifically includes completed operations; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement."

Two questions are presented, (1) Whether the policy covered the accident referred to in the State Court action; (2) Whether the insurer by its contract was required to defend the plaintiff against the action brought against him in the State Court.

█ The Exclusion relied upon by the defendant in the first ground of its mo-

tion to dismiss (Exclusion 4 on page 2 of the policy) refers exclusively to "Property Damage" and is not applicable since the suit in the State Court was for bodily injury rather than property damage. This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident.

The defendant also contends that the accident was not covered by reason of the fact that the policy does not provide for "Products Liability".

It is true that the policy contains an endorsement that "this policy does not apply to Products Liability or to a Warranty of Goods or Products in accordance with the Definitions of 'Products Liability' and of 'Contract' mentioned in Condition 3."

The policy does not provide under the heading "Exclusions" that the policy does not apply under coverage (B) (the general and broad comprehensive liability provision for bodily injury), to liability with respect to which insurance is or can be afforded under the "Products Liability" section of the policy. This is the usual provision in most of the policies covering operations. See, for example, Standard Accident Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794, 797. Under the schedules in the policy in the present case, the reference to "not covered" only refers to "aggregate products". In the policy involved in the Standard Accident Ins. Co. v. Roberts, case, supra, the coverage is listed as "Products or *Completed Operations*". Under that type of policy the insured was put on notice that if he does not pay a premium under this schedule he is not covered for completed operations. In the policy in this case the only reference is to "aggregate products".

The interpretation and legal effect of the policy here involved is to be determined in the light of the applicable South Carolina statutes and decisions. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. There is no decision of the Supreme Court of South Carolina dealing with the construction of the policy provision under consideration, therefore, I must construe the policy and adjudicate the rights of the parties thereunder "with the aid of such light as was afforded by the materials for decision at hand, and in accordance with the applicable principles for determining state law." Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 11, 12, 88 L.Ed. 9.

South Carolina follows the general rule that a policy of insurance should be liberally construed in favor of the insured. In Pitts v. Glen Falls Indemnity Co., 222 S.C. 133, 137, 72 S.E.2d 174, 175, the Court reiterated this familiar rule in the following language: "In Eaves v. Progressive Fire Ins. Co., 217 S.C. 365, 60 S.E.2d 687, 688, it is stated: 'Where the language of an insurance contract may be understood in more senses than one, or where it is doubtful whether the given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the insured and construed most strongly against the insurer.' * * * It is a well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. Long Motor Lines, Inc., v. Home Fire & Marine Ins. Co., 220 S.C. 335, 67 S.E.2d 512, 516, and authorities therein cited. 'It is equally well established that in determining the meaning of such a contract, the words should be taken in the plain and ordinary sense in which they are generally used and understood with regard to or in connection with the subject matter involved. The courts are not at liberty to adopt some strained or violent interpretation not contemplated by

the parties.' Long Motor Lines, Inc., v. Home Fire & Marine Ins. Co., supra."

"Products Liability", to the average person, refers to liability arising out of the use of, or existence of any condition in goods or products manufactured, sold, handled or distributed by the insured. The suit in the State Court involved no such liability, but is based on alleged negligent construction by the plaintiff.

An interpretation which entirely neutralizes one provision of the policy should not be adopted if the contract is susceptible of one which gives effect to all of its provisions and is consistent with the general intent. Seeming contradictions or conflicts should be harmonized if reasonably possible. 29 Amer.Jur., page 176.

After a careful analysis of all the relevant provisions of the policy, I must conclude that a plumbing and heating contractor's comprehensive liability coverage is not covered under the heading "Products", and that the policy here involved should be construed to cover the liability for accidents arising from plaintiff's operations whether the accident happened before or after the housing project was completed.

The New Jersey Court in McAllister v. Century Indemnity Co. of Hartford, Conn., 24 N.J.Super. 289, 94 A.2d 345, 347, affirmed, 12 N.J. 395, 97 A.2d 160, has recently so construed a liability policy whose terms were somewhat similar to the one here involved. In that case the insured had "Premise Operations" coverage. The policy there, as the one here, had a provision for "Products liability" coverage, the language of which is practically identical to the one here involved. The policy excluded coverage " 'under Divisions 1 and 6 of the Definition of Hazards, for liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards' ". Division 3 was the "Products liability" section, and the plaintiff procured no insurance thereunder. The only insurance which he had was under Division 1, which covered liability for bodily injury.

The New Jersey Court rejected the contention of the Insurance Company that the exclusion in the policy with reference to "Products liability" excluded any liability which might have been afforded under the "Products liability" section. The Court said: "The company also points to another part of the policy, entitled 'Exclusions,' which states that 'This policy excludes coverage: * * * (d) under Divisions 1 and 6 of the Definition of Hazards, for liability with respect to which insurance is or can be afforded under Division 3 of the Definition of Hazards; * * *.' Division 3 is headed 'Products.' The premium for insurance on products is based on 'Sales' at so much 'Per $1,000.' Under definition of hazards we find: 'Division 3. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the Named Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured; and operations covered under Divisions 1 and 6 of the Definition of Hazards (other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials), if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises.' A careful and repeated reading of exclusion (d) and of Division 3 of the definition of hazards, only emphasizes the vagueness and ambiguity of the policy. We are satisfied, however, that an excavator's liability insurance is not offered under the heading 'Products.' The whole policy must be considered in order to arrive at the true construction. It must be construed most strongly against the insurer and in favor of the insured Cohen v. Mutual Benefit etc., Ass'n, 134 N.J.Eq. 499, 36 A.2d 288 (Ch. 1944). 'If the terms used are imperfect, it is the fault of the defendants.' Snyder v. Dwelling House Ins. Co., 59 N.J.L. 544, 37 A. 1022, 1024 (E. & A.1896). The obvious object of the plaintiff in procur-

ing this policy was indemnity against liability on tort claims growing from his operations as an excavator. The company seems, in general, to have intended by the policy to afford him such indemnity for a limited period, the policy year. Except as particular provisions of the policy so curtail its scope that an ordinarily intelligent man would understand that the policy does not cover certain risks which come within its general scope —with that exception, the policy should be construed to cover all liability for accidents arising from plaintiff's operations, whether the accidents happened before or after the excavation job was finished. We agree with the trial court that the company is liable on its policy in respect to the claim that was asserted against plaintiff."

The decision in the McAllister case was followed and approved by the New Jersey Court in Van Der Veen v. Bankers Indemnity Ins. Co., 30 N.J.Super. 211, 103 A.2d 900.

Even if the policy in question did not cover plaintiff's operations after the same had been completed, as contended for by the defendant, the defendant is not entitled to summary judgment for the reason that the record does not show that the entire work that plaintiff had agreed to perform had been completed. It may be inferred from the allegations of the complaint, as well as from the answers of the plaintiff to certain requests for admissions, that the work of plaintiff in connection with the gas line servicing Apartment 14–E had been completed in the sense that the Housing Authority had decided to and had rented this apartment to tenants. There is no showing, however, that the entire work which plaintiff had agreed to do had been completed.

Defendant contends that "whether or not plaintiff had additional work to do in connection with other dwelling units in the project should make no difference here." The plaintiff had *one* contract for the plumbing and heating on the entire project. Whether or not the Housing Authority saw fit to take over and attempt to use one or more units before the project was completed cannot affect the question of whether plaintiff's "operations" had been completed.

Defendant is attempting to amend its policy so that the so-called exclusion clause ("Products liability" section) shall read "if the accident or occurrence takes place after *any portion or part of* such operations have been completed or abandoned * * *". (Emphasis added.)

A somewhat similar attempt by an insurance company was rejected by the Court of Appeals for the Eighth Circuit in General Casualty Co. of Wisconsin v. Larson, 196 F.2d 170. In that case the defendant invoked the exclusionary provision of the policy to the effect that it did not apply to completed or abandoned operations. The insured was employed by Clinite (a third party) to clean and service his furnace and oil burner. One of insured's employees was sent to the premises to clean the furnace. An accident arose out of the negligence of the employee who cleaned the furnace, after his work had been completed. The work of cleaning the oil burner had not been commenced. As to the contention that the work, or operations, had been completed, the District Court said: "Several cases are referred to in support of defendant's position in this regard: * * *. (Citing cases; most of which are the same as relied on by defendant here.) However, the cases relied upon by defendant are all to be differentiated from the instant case by reason of their own facts. In each of the cases referred to by defendant, the entire work that plaintiff had agreed to perform had been completed. Here, Larsen had received no pay for his work, nor had he billed the customer. *The customer did not consider the work completed, nor did the contractor.* And the undisputed evidence establishes that an important and highly essential part of the job remained undone." (Emphasis added.) Larsen v. General Casualty Co. of Wisconsin, 99 F. Supp. 300, 303. The Court of Appeals

agreed with the opinion of the District Court and held that the mere fact that a part of the job had been completed out of which the accident arose did not relieve the Insurance Company from liability since the entire job had not been completed. General Casualty Co. of Wisconsin v. Larson, supra, 196 F.2d 170.

In the present case there is no showing that the entire work which plaintiff had contracted to do had been completed, nor is there any showing that the same had been accepted by the owner or that the plaintiff had been paid for the same. If it can be shown that the plaintiff has not been fully paid for the work provided for under the contract, that such work had not been accepted by the owner, and further that the plaintiff omitted or failed to perform some essential act relative to the function of the work, it would be a question for the jury whether or not the plaintiff's operations had been completed within the meaning of the policy provisions. Daniel v. New Amsterdam Casualty Co., 221 N.C. 75, 18 S.E.2d 819; Larsen v. General Casualty Co. of Wisconsin, supra.

Was the defendant under the duty to defend the State Court action? The duty of the insurer to defend a suit against the insured depends upon the allegations of the complaint in that suit. Glens Falls Indemnity Co. v. Atlantic Bldg. Corp., 4 Cir., 199 F.2d 60. An insurer may not refuse to defend merely because its investigation and its determination of the facts of the suit lead it to the conclusion that the suit is ill-founded or is one not covered by the policy. Pow-Well Plumbing & Heating, Inc., v. Merchants Mutual Casualty Co., 195 Misc. 251, 89 N.Y.S.2d 469; Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750.

A careful analysis of the complaint in the State Court will show that it does not clearly and definitely allege that plaintiff's "Operations" had been completed. The allegations of the complaint indicate a clear intention on the part of the pleader to claim that the gas installations leading into Apartment 14–E were negligently constructed. It did not matter to the plaintiff whether he was injured before or after the plaintiff's "Operations" had been completed. It is clearly apparent from the allegations of the complaint in the State Court action that the plaintiff could have recovered by showing that the explosion occurred before plaintiff's "Operations" on this project had been completed. This being true the Insurance Company owed a duty to the plaintiff to defend the action. Employers Mutual Liability Ins. Co. of Wisconsin v. Hendrix, 4 Cir., 199 F.2d 53; Lee v. Aetna Casualty & Surety Co., supra, 178 F.2d 750; Boutwell v. Employers' Liability Assurance Corp., 5 Cir., 175 F.2d 597. To paraphrase Judge Soper's language in the Hendrix case, supra: In other words, it was obvious to the insurer upon reading the complaint that it was not essential to recovery that the claimant show that plaintiff's "Operations" had been completed, because claimant could recover damages from defendants by merely showing that they were negligent in the construction of the project.

In Boutwell v. Employers' Liability Assurance Corp., supra, 175 F.2d 597, 599, the facts were quite similar to those here involved. In that case the Court of Appeals for the Fifth Circuit, after stating that the duty of the Insurance Company to defend, must be determined by the allegations in the declaration in the suit against the insured, then said: "We also think it is quite clear that if the Appellant had fully completed the work of installation of a gas heater, and that the fire had occurred thereafter by virtue of defects in the appliances fully installed, there would have been no liability under the policy. Nevertheless, if the allegations of the plaintiffs were to the effect that the damage was caused by the negligence of the Appellant in the installation or in the failure to exercise reasonable care in installing the instrumentalities for use in transmitting and utilizing so volatile a substance as gas, there would have been an obligation under the policy upon the insurer to defend the suits and to pay the amount of the judg-

**12**

ments, costs, and expenses in the event of recoveries under such allegations."

In Massachusetts Bonding & Insurance Co. v. Roessler, Tex.Civ.App., 112 S.W.2d 275, the Court said, at page 280: "The appellant (insurance company) could not assume that such a finding would not happen, and thus refuse to defend the suit; but it was its duty to contest the case and defend against every contingency therein raised. Naturally there was a risk incurred if it should do so, but it was one of the hazards it assumed when it issued the policy and accepted the premiums. * * *"

In Pow-Well Plumbing & Heating, Inc., v. Merchants Mutual Casualty Co., supra, 195 Misc. 251, 89 N.Y.S.2d 469, 477, the Court said: "Here, the insurer, after holding the papers in the negligence action for some time, declined to continue the defense, apparently based on its investigation and its determination of the factual situation and not on the interpretation of the negligence complaint. The negligence complaint together with the policy (not the factual situation, determined by the insurer) establishes whether there is or is not a duty to defend."

There is an additional reason why the Insurance Company owed the duty to the plaintiff to defend the State Court action. In that action the complaint alleged, "plaintiff's parents had been informed by agents and employees of defendants that there was no danger and that the system could cause no harm"; and the complaint also charges the defendants with negligence in assuring the plaintiff and his parents that the gas system was safe.

The policy would insure the plaintiff, under these allegations, irrespective of whether or not his operations had been completed. Reed Roller Bit Co. v. Pacific Employers Ins. Co., 5 Cir., 198 F.2d 1.

The defendant's motion to dismiss and for summary judgment will be and the same is hereby denied, and

It is so ordered.