NATIONWIDE MUTUAL INSURANCE COMPANY v. JUNIOR REX TAYLOR; SHARON LAJOY LITTLE, INDIVIDUALLY; SHARON LAJOY LITTLE, ADMINISTRATRIX OF THE ESTATE OF DIVETTE LAJOY LINEBERGER, LINDA MISHER McCLEAVE, INDIVIDUALLY; AND LINDA MISHER McCLEAVE, ADMINISTRATRIX OF THE ESTATE OF MELVIN LEE McCLEAVE

No. 8125SC163

(Filed 1 December 1981)

**Insurance § 84.1— automobile liability policy—temporary substitute automobile— vehicle owned by policyholder's wife**

An automobile liability policy which includes the spouse of the policyholder as a "named insured" under the policy and excludes vehicles owned by the "named insured" from the definition of a "temporary substitute automobile" is interpreted so that "named insured" includes the policyholder's spouse only while the spouse is operating an "owned automobile" and "temporary substitute automobile" requires only that the automobile used as a substitute not be owned by the person operating it as a substitute. Therefore, an automobile owned by the wife and involved in a collision while being operated by the husband was a "temporary substitute automobile" within the meaning of the policy issued to the husband where the husband was using the automobile with the permission of the wife as a substitute for an owned automobile when the owned automobile was withdrawn from normal use because of breakdown or need of repair.

APPEAL by plaintiff from *Ferrell, Judge.* Judgment entered 14 January 1981 in Superior Court, CATAWBA County. Heard in the Court of Appeals 17 September 1981.

Plaintiff filed a complaint pursuant to the Uniform Declaratory Judgment Act, G.S. 1-253 et seq., seeking construction of provisions of a policy of automobile liability insurance. From a judgment for defendants, plaintiff appeals.

*Patrick, Harper and Dickson, by Stephen M. Thomas, and Petree, Stockton, Robinson, Vaughn, Glaze and Maready, by James H. Kelly, Jr. and Michael L. Robinson, for plaintiff appellant.*

*Corne and Pitts, by Stanley J. Corne, for defendant appellees.*

WHICHARD, Judge.

The sole question is whether the trial court correctly concluded that the 1971 Chevrolet Monte Carlo owned by Linda Mc-

Cleave and involved in a collision while being operated by her husband, Melvin McCleave, was a "temporary substitute automobile" as defined in a policy of liability insurance issued by plaintiff to Melvin McCleave, so as to afford excess coverage of the collision under that policy. We hold that it did.

Plaintiff entered a contract of automobile liability insurance with Melvin McCleave which covered a 1963 Ford van and a 1970 Chevrolet Malibu. The policy afforded coverage to Melvin Mc-Cleave as "named insured" while he was driving an "owned automobile." The policy definition of "owned automobile" included the vehicles described in the policy and a "temporary substitute automobile," defined as "any automobile . . ., not owned by the Named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile . . . when withdrawn from normal use because of breakdown, repair, servicing, loss or destruction." The policy contained the following provision in its liability coverage section: "The following are Insureds under [the liability section]: (a) with respect to the owned automobile, (1) the Named Insured and any resident of the same household . . . ." The definition of "named insured" was "the individual named in the declarations and also includes his spouse, if a resident of the same household."

On 14 June 1977, while the policy was in effect, Melvin Mc-Cleave was killed in a collision which occurred while he was driving his wife's 1971 Chevrolet Monte Carlo. One passenger in the Monte Carlo was killed, and another was seriously injured. Suits brought by and on behalf of the passengers against Linda Mc-Cleave individually and as administratrix of her husband's estate were reduced to judgment. The limits of Linda McCleave's automobile liability insurance policy were paid but did not satisfy the judgments. Plaintiff sought determination whether Melvin McCleave's policy afforded excess coverage.

The court found as a fact that on the night of the accident Melvin McCleave's 1970 Chevrolet Malibu "had been withdrawn from normal use because of its breakdown and need of repairs and that because of that condition of the 1970 Chevrolet Malibu Melvin McCleave was driving the 1971 Chevrolet Monte Carlo owned by his wife and with her permission." The evidence sup-

ports this finding, and it is therefore conclusive on appeal. *See, e.g., Insurance Co. v. Allison,* 51 N.C. App. 654, 277 S.E. 2d 473 (1981). The finding establishes that the requirements of the definition of "temporary substitute automobile" that the vehicle (1) was used as a substitute for the owned automobile when the owned automobile was withdrawn from normal use because of breakdown or need of repair, and (2) was used with the permission of its owner, have been satisfied. On the basis of this finding the court concluded as a matter of law that the 1971 Chevrolet Monte Carlo was at the time of the collision a "temporary substitute automobile" within the meaning of that phrase as used in the policy.

Plaintiff argues that Linda McCleave's vehicle could not constitute a "temporary substitute automobile" under her husband's policy because Linda McCleave was a "named insured" under the policy and the definition of "temporary substitute automobile" excluded vehicles owned by the "named insured." We disagree with plaintiff's interpretation of those provisions of its policy.

> The heart of a contract is the intention of the parties. The intention of the parties must be determined from the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed. . . . Any ambiguity in a written contract is construed against the party who prepared the writing.

*Adder v. Holman & Moody, Inc.,* 288 N.C. 484, 492, 219 S.E. 2d 190, 196 (1975).

> [A] contract of insurance should be given the construction which a reasonable person in the position of the insured would have understood it to mean and, if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language.

*Grant v. Insurance Co.,* 295 N.C. 39, 43, 243 S.E. 2d 894, 897 (1978). Applying these principles to plaintiff's argument, we conclude that a reasonable person in the position of the insured

would have understood that the purpose of including the policyholder's spouse in the definition of "named insured" was to broaden coverage under certain circumstances by extending it to one other than the policyholder. We do not believe the parties intended, by a provision evidently designed to extend coverage to one other than the policyholder, to reduce significantly the coverage afforded the policyholder himself. Such reduction would be the effect of the interpretation for which plaintiff contends, and we thus reject the contention.

As we interpret the policy, the term "named insured" refers to the person designated as the policyholder when that person is driving an "owned automobile." "Named insured" includes the policyholder's spouse only while the spouse is operating an "owned automobile." Thus, the definition of "temporary substitute automobile" requires that the automobile used as a substitute not be owned by the person operating it as a substitute. The policy protects the policyholder while operating, as a temporary substitute for the described vehicle while the described vehicle is withdrawn from use for one of the specified reasons, any vehicle not owned by him. The policy also protects the spouse of the policyholder while operating, as a temporary substitute for the described vehicle, a vehicle not owned by said spouse.

Under this interpretation the 1971 Monte Carlo owned by Linda McCleave and operated by Melvin McCleave was, at the time of the collision, "not owned by the Named Insured" within the intent and meaning of that phrase as used in the policy. As noted above, the other requirements for constituting a vehicle a "temporary substitute automobile" — *viz.*, that it was used as a substitute for the "owned automobile" when the "owned automobile" was withdrawn for repairs, and that it was used with the permission of the owner, have been satisfied. We thus hold that the insurance contract between plaintiff and Melvin McCleave provided excess coverage for the collision. At least two other jurisdictions have reached the same result on similar facts. *See Caldwell v. Hartford Accident and Indemnity Co.*, 160 So. 2d 209 (Miss. 1964); *Baxley v. State Farm Mutual Automobile Liability Insurance Co.*, 241 S.C. 332, 128 S.E. 2d 165 (1962).

The judgment is

Affirmed.

Judges HEDRICK and HILL concur.